**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Martin R. SHIELDS,**
**Defendant-Appellant.**

**No. 77–1095.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 15, 1978.

Decided March 22, 1978.

Brent Ward, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., and Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah, on brief), for plaintiff-appellee.

James E. Hautzinger of Dawson, Nagel, Sherman & Howard, Denver, Colo., for defendant-appellant.

Before BARRETT, BREITENSTEIN, and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Martin R. Shields (Shields) appeals from a jury conviction and sentence following trial on a two-count information wherein he was charged with making a false statement in the acquisition of a firearm and the transportation of a firearm in interstate commerce by a felon in violation of 18 U.S.C. §§ 924 and 922(a)(6) (1976) and 18 App. U.S.C. § 1202(a)(1) (1977).

On June 10, 1971, Shields was convicted in the District Court for Salt Lake County, Utah, on state charges of the felony crime of assault with a deadly weapon.

On August 11, 1975, Shields purchased a .38 caliber Arminius revolver from Siegel's Loan Company, a licensed dealer of firearms, in Salt Lake City. Shields dealt with Siegel's employee, Kenneth L. Forsberg, who testified that he observed Shields fill out the firearms transaction form in his presence. Forsberg knew Shields previous to this occasion, inasmuch as Shields had been a pawn customer of Siegel's. He observed Shields sign the firearm transaction form which he (Forsberg) approved after verifying Shields' employment status. The U.S. Treasury Information Form 4473 completed and signed by Shields contained the answer "No" to the question "Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year?" [R., Vol. III, pp. 5–8, 11.] Forsberg identified the firearm marked as Plaintiff's Exh. 2 as the identical firearm described on Form 4473 and that which he sold to Shields.

On August 18, 1975, Shields was arrested in Las Vegas, Nevada, in connection with a

criminal complaint filed with the police department there involving Shields as a suspect. While incarcerated in the city police jail, Shields executed a written "Permission to Search" form of his room at the Little Motel in Las Vegas which he granted to Officer Leonard Smith, a member of the North Las Vegas police force. Smith proceeded to Shields' room armed with the written consent and he there conducted a search which resulted in the discovery of the firearm Shields had purchased from Siegel's. When the Government offered the "Permission to Search" form in evidence, Shields objected to its admission and to any testimony relating to it on the ground that prior to executing the form Shields had not been given the *Miranda* warnings. The trial court sustained the objection insofar as it applied to admission in evidence of the written permission form, but not in relation to the conversation between Shields and Officer Smith relative to the search.

Warren Wheeler, Special Agent for the Bureau of Alcohol, Tobacco and Firearms testified that he obtained four known handwriting samples of Shields, copies of which were submitted with the Firearms Form 4473, *supra*, to the agency's laboratory in Washington, D. C. for handwriting analysis. Lynn Bonjour, an expert examiner of questioned documents, testified regarding the handwriting analysis she made relative to the samples submitted. She stated that she had determined that the same person who wrote on documents submitted as known handwriting samples of Shields also wrote the signature on the Form 4473, *supra*, which had been admitted in evidence as Exh. 1. The four documents containing the known handwriting samples were not offered in evidence. Shields' counsel did not inquire of their whereabouts or demand that they be produced. Instead, Shields' counsel simply objected to Bonjour's testimony on the ground that the samples examined were not originals. This objection was overruled.

The Government, following Bonjour's testimony, moved for the admission in evidence of its Exhibits 1 and 2, consisting of the Form 4473, *supra*, and the .38 caliber

Arminius revolver. No objections thereto were lodged. The Government had moved for admission, without objection, of its Exhibits 3 and 4 consisting of a certified document evidencing that Siegel's was a licensed firearms dealer and a certified and authenticated sentence evidencing that in 1971 Shields had been convicted of a state charge of assault with a deadly weapon.

Shields did not testify and he presented no defense evidence. His motion for judgment of acquittal was reserved for consideration by the court until after the jury returned its verdict. It was denied after the jury returned the guilty verdict.

On appeal, Shields contends that his conviction must be set aside because of these alleged trial court errors: (1) the admission in evidence of the testimony of the handwriting analysis "Expert," where none of the documents used for comparison purposes was identified at trial, admitted into evidence, or found by the trial court to contain the genuine signature of the defendant, (2) the admission into evidence of the subject gun retrieved in a search of Shields' Las Vegas apartment based upon the alleged oral consent to search since the trial court had excluded from evidence a "Permission to Search" form signed by Shields, and (3) deprivation of Shields' Sixth Amendment right to counsel at trial in that the assistance of his appointed counsel was inadequate and ineffective.

## I.

Shields contends that the trial court erred in admitting in evidence the testimony of the Government's handwriting analysis "Expert," Bonjour, where none of the documents used for comparison purposes were identified at trial, admitted in evidence or found by the trial court to contain the genuine signature of Shields.

The copies of "documents" which the Government submitted to its expert for handwriting analysis comparisons containing Shields' known signatures consisted of Plaintiff's Exh. 6 (not admitted in evidence) which included a form used by the Utah

Board of Pardons and Parole which related to Shields' felony assault conviction, a Property Record form kept by the Salt Lake County Sheriff's office which referred to Shields' arrest on the felony assault charge and a Las Vegas, Nevada, Police Department "booking" slip which referred to Shields' contact with police in Las Vegas giving rise to the discovery of the .38 caliber Arminius revolver and the "Permission to Search" form requested in Las Vegas, marked Plaintiff's Exh. 5 (not admitted in evidence). The latter form related to the consent given by Shields to search his apartment which resulted in the discovery of the .38 caliber firearm.

Following Bonjour's qualification as an expert witness she testified that she had performed examination of various documents with reference to Shields' signature. She said that she had compared Shields' signature from photocopies of four documents, the originals of which she had examined prior to trial. The photocopies were marked as Government exhibits. No objection was lodged to the admission in evidence of Pl.Exh. 1, a copy of the Form 4473, *supra*. The balance of the documents examined, four in all, were not offered by the Government during or after Miss Bonjour's testimony. The reason therefor is, we believe, quite apparent from the record. Before Miss Bonjour was called to testify, one Steven V. Love of the Utah Board of Adult Probation and Parole had identified Pl.Exh. 6, a document which related to Shields' prior Utah state felony assault conviction. When Love was asked to describe the exhibit, counsel for Shields objected on the ground that because it was not the original document it was not the best evidence [R., Vol. III, p. 25.] Significantly here, however, is the fact that the trial court refused its admittance, after personally examining the document, on the ground that: "*I don't think it is admissible at all, whether it's the original or a copy. It has no business in this trial.*" (Emphasis supplied.) [R., Vol. III, p. 25.] When Government counsel informed the court that it wished to pursue the matter ". . . in order to establish handwriting identification . . . it has

a bearing on the signature of . . . Shields with a handwriting expert," again counsel for Shields objected on the ground that it was not the original or an authenticated copy. [R., Vol. III, p. 26.] The trial court again sustained the objection to its admission, but on the basis that there was a ". . . *reference in [the] document that is inadmissible in evidence.*" (Emphasis supplied.) [R., Vol. III, p. 26.] Clearly, the trial court found that the documents examined by Miss Bonjour, copies of which were offered in evidence by the Government, referred to unrelated convictions, arrests and/or police or probation records which the trial court believed would, if admitted and viewed by the jury, work to the serious prejudice of Shields and "taint" the fairness of his trial. We observe that if Shields then believed that the trial court was in error, he certainly might well have challenged this ruling in the course of cross-examination of Miss Bonjour by simply offering the very documents in evidence or, for that matter, the originals which the Government announced that it could produce. For obvious reasons he did not do so. Notwithstanding Shields' challenges to the failure of the Government to prove the "genuineness" of the documents, Shields *did not* object to Miss Bonjour's testimony. We hold that her testimony was clearly admissible under Fed.Rules Evid.Rule 703, 28 U.S.C.A. which provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.* (Emphasis supplied.)

 Rule 703, *supra*, was satisfied in the case at bar. The trial court and counsel for Shields were fully alerted to the signature *data* relied upon by Miss Bonjour contained *on* the documents submitted to her for examination both before and at trial in order to provide her with an adequate and proper

basis for her expert opinion. No actual challenge was made to the genuineness of the handwriting comparisons testified to by Bonjour. No "plain error" was committed affecting the substantial rights of Shields. Fed.R.Crim.Proc., rule 52(b), 18 U.S.C.A. In any event, no objection was lodged to Miss Bonjour's *testimony*. Such failure does not give rise to the invocation of Rule 52(b), *supra*, on appeal. We have held that we will notice only "serious prejudicial error" affecting life or liberty where the record reflects that no objection was lodged. *Tapia v. Rodriquez*, 446 F.2d 410 (10th Cir. 1971); *Whaley v. United States*, 394 F.2d 399 (10th Cir. 1968).

## II.

Shields contends that the trial court erred in admitting testimony of Las Vegas Police Officer Smith that he "retrieved" the .38 caliber revolver (which Shields had purchased at Siegel's) when he searched Shield's apartment in Las Vegas. This error is predicated upon the trial court's exclusion from evidence of the "Permission to Search" form executed by Shields. We disagree.

Smith testified that he obtained oral consent from Shields to search the room or apartment that Shields was occupying in Las Vegas at the time of his arrest. In addition to the oral consent, Officer Smith submitted a "written waiver" on the form entitled "Permission to Search" which Shields executed in his presence and in the presence of Officer Williams authorizing the officers of the department to conduct a complete search, without warrant, of his apartment and to take from it any property or material desired as evidence for criminal prosecution. This form was marked Pl. Exh. 5 and offered in evidence. Upon voir dire by counsel for Shields, Officer Smith was asked whether he gave Shields the *Miranda* warning before Shields executed the "Permission to Search" form. Smith responded that he had not. [R., Vol. III, p. 21.] When the Government offered the form in evidence the following colloquy occurred:

THE COURT: He says he didn't give him the Miranda warning.

MR. SNARR (For Government): Your Honor, the Miranda warning is not in issue here.

THE COURT: Well, that is what you say.

MR. SNARR: The constitutional amendment that is in question is the Fourth Amendment right to be free from unlawful search and seizure and a recognized exception is a consent to search.

THE COURT: Well, he is entitled to know his rights before he signs a consent.

MR. SNARR: This form in and of itself—

THE COURT: The objection is sustained.

MR. SNARR: I have no further questions of this witness.

MR. DAHL (For Shields): Your Honor, subject to my objection, as I understand it, his whole testimony is stricken, is that correct?

THE COURT: I didn't do anything of the kind. I sustained an objection to the introduction of a document.

[R., Vol. III, at 22, 23.]

Thus, it is clear that while the trial court denied the admission in evidence of the "Permission to Search" form in light of failure to give the *Miranda* warnings in advance of execution thereof, still the court admitted the testimony of Officer Smith relative to Shields' oral consent to search. Thus, the trial court implicitly found that Shields did *in fact* grant such consent voluntarily and knowingly. This conclusion is bolstered, we believe, when we consider that the "fruit" of the search i. e., the .38 caliber revolver, was admitted in evidence.

■ In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) the Supreme Court addressed itself to the precise question as to the quantum of proof required of the prosecution in order to demonstrate that a consent to search is "voluntarily" given within the protective ambits of the Fourth Amendment. The Court explicitly rejected the proposition

that such a search is involuntary if the police failed to first advise the accused that he has a right to refuse to grant consent. The Court concluded that the totality of the circumstances rule applied in determining the voluntariness of a consent to search:

. . . if under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority— then we have found the consent invalid and the search unreasonable. See, e. g., *Bumper v. North Carolina*, 391 U.S. [543,] at 548–549, 88 S.Ct. at 1791–1792; *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed.2d 436; *Amos v. United States*, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654.

412 U.S., at 233–234, 93 S.Ct., at 2051.

*Schneckloth, supra*, rejected the argument that proof of the "requirement of a knowing and intelligent waiver" of a Constitutional guarantee was required in relation to a claimed consensual search. The Court held that this standard ". . . has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." The Court observed that *Miranda* was intended to protect the fairness of the trial, but that "there is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment." 412 U.S., at pp. 237, 241, 93 S.Ct., at p. 2055.

Just as the Court in *Schneckloth, supra*, accepted the "traditional" definition of voluntariness, i. e., that predicated upon the totality of the surrounding circumstances, so, too, this Court has followed that test. In *Wren v. United States*, 352 F.2d 617 (10th Cir. 1965), *cert. denied*, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966), we held that in order to show voluntary consent to search, it must clearly appear that the search was voluntarily permitted and agreed to by the person whose right was involved, that such person was cognizant of his rights and that the consent was not contaminated by any duress or coercion.

To be sure, this court has recognized that an alleged voluntary consent to search must be viewed with caution and misgivings if given after arrest. *Wion v. United States*, 325 F.2d 420 (10th Cir. 1963), *cert. denied*, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). Even so, the court must look to all of the facts and circumstances in determining whether consent to search is freely given by one under arrest. *Hubbard v. Tinsley*, 350 F.2d 397 (10th Cir. 1965). And we have held that no specific "warning" is required in advising one of his rights relating to a voluntary consent to search. *Carpenter v. United States*, 463 F.2d 397 (10th Cir. 1972), *cert. denied*, 409 U.S. 985, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972); *White v. United States*, 444 F.2d 724 (10th Cir. 1971).

In the instant case, Officer Smith testified that before contacting Shields relative to his execution of the "Permission to Search" form that he had advised Shields of certain of his *Miranda* rights. He further testified that before obtaining the written consent form, he had been informed that Detective King, who testified at the trial, had previously advised Shields of all of his *Miranda* rights. Officer Smith testified that he discussed with Shields the "Permission to Search" form, obtained Shields' oral permission to search and thereafter obtained the written consent and waiver. [R., Vol. III, pp. 18, 19.]

Nothing in this record indicates that a motion to suppress the .38 caliber firearm from admission in evidence was made. Even so, Shields now contends that "taint" resulted from the search of his apartment. Thus, Shields confronts us with the trial court's apparent inconsistent evidentiary rulings made during the course of the trial. This, we suggest, brings into play Fed.Rules Evid.Rule 103, 28 U.S.C.A. which provides in pertinent part:

(a) *Effect of erroneous ruling*. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; . . .

The trial court, we submit, obviously intended that the jury consider the oral statements made by Shields concerning the search of his apartment in view of the remark made at the time Shields objected to Officer Smith's testimony and this instruction given at the close of the evidence and arguments:

You are instructed that you may consider the evidence which was introduced in the form of admissions of the defendant. Every admission must be viewed in the light of all the surrounding circumstances and facts. An admission may be considered with great weight when it can be said from such examination that it was given freely and voluntarily and without threats, compulsion and use of force.

[R., Vol. III, at 48.]

Shields did not testify. The Government did not present any evidence of a confession or admission of guilt made by Shields. Thus, the "admissions" referred to by the trial court could only have been those made against his interest in relation to the challenged search.

No plain error can be attributed to the warrantless search under the totality of the facts and circumstances present here.

### III.

Shields contends that he was deprived of his Sixth Amendment right to counsel at trial in that the assistance of his appointed counsel was inadequate and ineffective.

Specifically, Shields contends that his trial counsel was inadequate and ineffective in: (a) failing to effectively cross-examine witness Kenneth L. Forsberg on his failure to personally identify Shields as the purchaser of the firearm during the preliminary hearing even though he made a positive identification at trial, (b) his failure to

object at any time to the admission of the .38 caliber firearm in evidence, even though the trial court denied admission of the written "Permission to Search" form, and (c) his failure to object to testimony of the handwriting expert Bonjour on the ground that her testimony was without proper foundation.

We believe that we have heretofore effectively considered and discussed these contentions going to the issue of inadequate trial counsel in disposing of certain errors claimed by Shields on appeal. The only matter we now deem worthy of additional discussion relates to Shields' trial counsel's failure to object to the introduction in evidence of the firearm recovered in Shields' apartment as a result of the alleged consensual search. We have previously observed that however inartfully the matter was handled by the trial court, it is apparent that all involved at the trial, including the jury, understood that the issue of Shields' voluntary consent to search was one which the trial court treated as a fact issue to be resolved by the jury. The Court did not err. Even when different inferences may be drawn, appellate courts will not substitute their judgment relative to the weight to be given the evidence for that of the jury. *United States v. Spoonhunter*, 476 F.2d 1050 (10th Cir. 1973). We are not a forum for trial *de novo. Dailey v. City of Lawton, Oklahoma*, 425 F.2d 1037 (10th Cir. 1970).

The standard of adequacy of counsel applicable in the Circuit is that a defendant will be considered to have had adequate counsel unless his representation at trial is considered to be a mockery of justice and a sham. *Frand v. United States*, 301 F.2d 102 (10th Cir. 1962). Nothing in this record evidences that Shields' trial counsel rendered trial representation which could be considered a mockery of justice and a sham.

WE AFFIRM.