**UNITED STATES of America, Plaintiff,**

**v.**

**George L. CARSON, Defendant.**

**No. 83–10049–01.**

United States District Court,
D. Kansas.

Aug. 1, 1985.

plaintiffs might be irreparably harmed by the denial of a preliminary injunction at this point.

508

Benjamin L. Burgess, Acting U.S. Atty., Wichita, Kan., for plaintiff.

Michael S. Holland, Russell, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter involves a motion to suppress in a case in which the defendant is charged with unlawful possession of protected migratory birds in excess of the daily bag limit, in violation of 16 U.S.C. § 703. This matter was originally before the Court on the defendant's appeal from the Magistrate's orders, in which the Magistrate held that the defendant waived his right to raise a motion to suppress, and found the defendant guilty. This Court found the Magistrate abused his discretion in refusing to consider the merits of the motion to suppress, found the search unlawful, granted the motion to suppress, and entered judgment of acquittal. The United States appealed this Court's order to the Tenth Circuit Court of Appeals. The Court of Appeals reversed this Court, holding the defendant's consent to a search following an earlier illegal search purged the second search of the taint of illegality and validated the second search for Fourth Amendment purposes. The Court of Appeals remanded to this Court for a fact finding as to the validity of the defendant's consent. This Court heard oral argument on the consent question on July 12, 1985, and now finds there was a full and voluntary consent to the second search and reinstates the conviction of the defendant.

The facts of this case are that defendant George L. Carson, at the time of the incident, was employed as a wildlife biologist by the Kansas Fish and Game Commission. On September 17, 1982, Mr. Carson was hunting doves. Joe Branick, a Russell County Deputy Sheriff, was investigating the theft of some shotgun shells and approached Mr. Carson, who was in a wheat stubble field sitting on a five-gallon pail hunting turtle doves. Mr. Branick observed Mr. Carson shoot nine turtle doves. When Mr. Carson walked into the field, Mr. Branick searched Mr. Carson's pail, looking for evidence of the stolen shells. Mr. Branick observed several freshly killed doves on top of a hunting vest, lifted the hunting vest, and observed six dressed doves. Mr. Branick had no cause to believe that Mr. Carson had killed more than his daily bag limit at the time Mr. Branick searched the bucket. (Docket No. 3, p. 23.) As Carson and Branick left the field, Branick observed feathers and other remains of doves clinging to weeds and on the ground in an area where Mr. Carson picked up a shotgun he had left earlier that day.

Mr. Branick left Mr. Carson and contacted Doug Sonntag, a state fish and game officer, to inquire whether Mr. Carson had exceeded his daily bag limit. Mr. Branick and Mr. Sonntag returned to the field and asked Mr. Carson if they could look inside his hunting pail. Mr. Carson consented. Mr. Sonntag removed 12 freshly killed doves from on top of the vest, lifted up the vest and removed 11 dressed doves. The Kansas regulations provide for a daily bag limit of 12 doves and a possession limit of 24. The Magistrate found that all 23 doves had been killed the same day, and found the defendant guilty of the charge.

The Tenth Circuit Court of Appeals, in reversing this Court's suppression of the evidence, held that the defendant's consent, if voluntary, vitiated any illegality of the first search. The Court of Appeals stated as follows:

> The district court correctly held that the magistrate should have granted relief from the waiver provisions of Rule 12(f).

> The search by Branick when he picked up the vest to reveal the six dressed doves was in violation of the Fourth Amendment in that the dressed doves were not in plain view.

*United States v. Carson,* 762 F.2d 833, 835 (10th Cir.1985). The Court of Appeals then went on to discuss the effect of the defendant's consent to the subsequent search. The Court stated as follows:

> A search conducted pursuant to a voluntary consent is valid for Fourth and Fourteenth Amendment purposes.
>
> \* \* \* \* \* \*
>
> Assuming that the first search was illegal, defendant's consent purged the second search of any taint from the first search and validated the second search for Fourth Amendment purposes.

*Id.* at 836, *citing United States v. Fike,* 449 F.2d 191, 192–93 (5th Cir.1971). The Court remanded, stating:

> Because the validity of the second search involves a question of fact, the voluntary consent to the second search, the district court, on remand, may wish to remand the case to the magistrate for determination of the facts.

*Id.* at 837.

## I.

The Court first addresses the question of fact concerning the voluntariness of the consent to the second search. At the July 25, 1985 oral argument, counsel for both parties agreed that the trial record was sufficient for this Court to make a finding of fact as to whether Mr. Carson's consent was voluntary.

The United States points to three places in the record in which Mr. Carson consented to the search. In Mr. Carson's letter of September 9, 1982, to Steve Sorenson, Mr. Carson wrote, "He [Mr. Branick] then asked if they could search my truck. I said, sure!" (Govt. Tr. Ex. 11, p. 3.) At trial, Mr. Carson testified, "Well ... Mr. Branick asked if he could ... if they could look into my pickup and I said, well certainly...." (Tr. Vol. III, p. 61.) Mr. Carson

testified further, "... Detective Branick was ransacking my truck. He asked me to unlock my tool box, which I did gladly, while they were searching." (*Id.* at 62.)

The defendant argues that the failure of the county deputy sheriff and the state game protector to inform Mr. Carson of the initial search deprived defendant of his ability to make a voluntary and intelligent consent to the search.

■■■ A search conducted pursuant to consent is an exception to the requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Valid consent must be freely and voluntarily given, and not the result of coercion or duress, express of implied. *Id.* Voluntariness is a question of fact to be determined from the totality of the circumstances. *Id.; United States v. Shields*, 573 F.2d 18 (10th Cir. 1978). One factor in determining whether the individual consented is whether he knew or was advised of his right to refuse the search. *Id.* Nonetheless, the government is not required to advise an individual of his right to withhold consent in order to find a voluntary consent. *Shields, supra.* Moreover, the prosecution is not required to demonstrate as a prerequisite to establishing voluntary consent, that the individual had knowledge of or was advised of his right to refuse. *Schneckloth, supra.*

■■ The law, as stated above, is that the government need not advise an individual of his constitutional right to withhold consent to search. There is no authority for the defendant's argument that the government must disclose the facts, for example, of prior surveillance in order for a subsequent consent to be voluntary. On the facts of the case at bar, this Court rejects defendant's assertion that the county sheriff and state game protector were required to advise Mr. Carson of the initial search in order for Mr. Carson's consent to be knowing and voluntary.

■■ This Court, having reviewed the transcript and record of trial proceedings before the Magistrate, and with particular reference to the testimony and evidence quoted above, finds that under the totality of the circumstances, Mr. Carson's consent was the product of his own free will and unconstrained choice. The Court finds that Mr. Carson's consent to the search was voluntary.

II.

The defendant additionally contends that the Tenth Circuit Court of Appeals remanded the case to this Court to make a fact finding not solely on the issue of whether the consent was voluntary, but also as to all facts surrounding the validity of the consent. The defendant argues that even if this Court finds the consent was valid, under the facts of this case the consent was not an independent act sufficient to break the causal connection between the primary illegality and the evidence found as a result of the second search. This Court agreed to consider the defendant's argument concerning attenuation of the taint, requested the United States to submit a reply brief on the issue, and entertained oral argument on the issue.

The defendant argues that the challenged evidence was the direct result of the state's illegal conduct because the officers requested defendant's consent on the basis of what Branick illegally discovered in the first search, and therefore, the consent was not sufficiently independent of the illegality to break the causal connection between the illegality and the discovered evidence. The defendant argues that the challenged evidence is a direct result of the government's exploitation of the initial illegal search, a taint the defendant's consent cannot cure. The defendant strenuously argues that the challenged evidence was the direct result of illegal government conduct because the second search yielded the identical evidence as the earlier illegal search. Defendant argues that a consent cannot cure the illegal taint if what is ultimately discovered and offered at trial is the very same evidence discovered as a result of illegal governmental intrusion.

On the other hand, the United States argues that a consent, so long as it is voluntary, will always break the causal connection between any illegality and any evidence discovered subsequent to the consent. The United States argues that consent is an independent act of the defendant's free will, determined by the defendant's actions and state of mind, and is totally unrelated to any conduct—legal or illegal—of government officials. The United States totally rejects defendant's argument that there is any distinction whether the evidence discovered pursuant to illegal conduct is the "identical evidence" as that discovered pursuant to lawful means, or whether evidence discovered pursuant to illegal conduct is "new or different evidence" as that discovered pursuant to lawful means. The United States asserts, moreover, that under the inevitable discovery doctrine, the doves discovered as a result of the initial illegal search would have inevitably been discovered as a result of defendant's later consent.

The Court of Appeals for the Tenth Circuit, in the appeal of the case at bar, relied on the case of *United States v. Fike,* 449 F.2d 191 (5th Cir.1971), in holding that defendant's consent, if voluntary, purged the second search of any taint from the first search and validated the second search for Fourth Amendment purposes. *United States v. Carson,* 762 F.2d 833, 836 (10th Cir.1985).

In *United States v. Fike,* the police conducted two separate searches; articles discovered pursuant to the first search were not introduced at trial; evidence discovered pursuant to Fike's consent was different than the items discovered in the first search, and evidence discovered pursuant to the second consensual search was introduced and admitted at trial. The Fifth Circuit in *Fike* held that although the police would not have asked Fike to consent to a search "but for" the first illegal search, evidence discovered as a result of the second consensual search was admissible because Fike's consent purged the taint. The Fifth Circuit stated as follows:

It is possible that "but for" the first search the police would not have taken the car, would not have taken the defendant into custody, and would not have conducted the second search which yielded the challenged evidence. However, assuming, but not deciding, that the first search was illegal, we hold that the evidence gained as a result of the second search, the only evidence of which the defendant complains, was admissible. This is so because the voluntary consent of the defendant to the second search, found by the district court and affirmed by this Court, was an independent act sufficient to break the causal connection between the alleged primary illegality and the evidence found as a result of the second search and admitted at trial. The consent not only, as discussed above, served to validate the second search for Fourth Amendment purposes but also purged the second search of the "primary taint."

*Id.* at 193.

Defendant Carson contends that the facts of the instant case are distinguishable from the facts of *United States v. Fike* and require a contrary legal result. Mr. Carson argues that in *Fike* an initial illegal search yielded evidence which caused the police to secure the defendant's consent to a second search which yielded different, admissible evidence. In the case at bar, on the other hand, the initial illegal search yielded the doves in excess of the daily bag limit, this illegally discovered evidence motivated the police to secure Mr. Carson's consent to a second search, and the second search yielded the same proceeds and the police did not "discover" anything they didn't already know.

Mr. Carson argues that the better rule to govern his case under the facts is that presented in *United States v. Melendez-Gonzalez,* 727 F.2d 407 (5th Cir.1984), which the Fifth Circuit decided ten years after its decision in *Fike.* In *Melendez-Gonzalez,* border patrol agents in Texas stopped a car that was 60 miles from the United States-Mexico border with no rea-

son to suspect that the car was carrying illegal aliens or contraband. Using a flashlight, the agents peered into a small hole in the trunk and observed a burlap-covered object. The agents asked the driver to open the trunk, but he refused. The agents used a tire tool to partially spring the lid of the trunk, and observed a large burlap sack and smelled marijuana. The agents took the driver and his passenger to the station and read them their *Miranda* rights. While in custody, the driver signed a consent to search form. The agents pried open the trunk and found 21 pounds of marijuana. The trial court held the initial stop and subsequent search were legal, or in the alternative, that the voluntarily signed consent form vitiated any illegality of the initial stop and search. The Fifth Circuit reversed, finding that both the stop and the search were illegal, and that the consent was too late to vitiate the illegality because the illegal stop and search had already been conducted by the time the consent form was signed. The Fifth Circuit stated as follows:

> We find the district court's conclusion with regard to consent incorrect as a matter of law. We do not dispute the fact that defendant actually signed the consent form, or even that he did so voluntarily, further, we accept the well-established rule that "a search conducted pursuant to consent is excepted from requirements of probable cause and warrant." *There is no authority, however, which justifies an earlier illegal search based upon a later consent to an additional search.*
>
> \*      \*      \*      \*      \*      \*
>
> Since for all practical purposes, the search was conducted on the highway, the consent form which defendant signed at the station simply came too late.

*Id.* at 413–14 (citations omitted).

Mr. Carson argues that the facts of his case are consistent with the facts of *Melendez-Gonzalez* in that the second search pursuant to his consent yielded the same evidence discovered by Branick in his initial

illegal search, and therefore, the evidence must be suppressed.

Mr. Carson argues that further authority for his argument is the recent United States Supreme Court case of *Segura v. United States,* —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The Court of Appeals held that evidence discovered in plain view subsequent to an initial illegal entry must be suppressed, but evidence later discovered pursuant to a search warrant was admissible. The Supreme Court held that evidence discovered in the second search which was based upon a valid search warrant issued wholly on information known to the police before their initial illegal entry was admissible because the evidence was discovered from an independent source.

However, the issue of the admissibility of the evidence discovered first in plain view following the initial illegal entry, and again discovered along with other evidence pursuant to the warrant, was not before the Supreme Court. *Id.,* at —— n. 4, 104 S.Ct. at 3385 n. 4, 82 L.Ed.2d at 607 n. 4. Thus, as the United States points out in its brief, although evidence discovered pursuant to illegal conduct was treated differently by the lower courts than evidence discovered pursuant to the warrant, this distinction was not a basis for the Supreme Court's ruling. Although the practical result of the case is consistent with the defendant's argument, it was not a legal rationale employed by the Supreme Court, and for this reason does not directly support Mr. Carson's argument. The *Segura* case, nevertheless, is an example of the independent source exception to the exclusionary rule, and clearly points out the requirement that in order for some intervening act to purge the illegality, it must come from a source wholly unconnected and wholly unrelated to the initial illegal conduct.

Finally, Mr. Carson argues that even if his consent was voluntary, his consent derived from the government's exploitation of its prior illegal activity and, under the facts of this case, his consent was not sufficient-

ly independent of that illegality to be purged of the primary taint. Mr. Carson refers to the case of *McGinnis v. United States*, in which the court stated as follows:

A federal agent cannot participate in an unlawful search, and then on the basis of what he observed in the course of that search, and on that basis alone, go to the United States Commissioner and swear out a search warrant. Such a search warrant, and the evidence procured in the course of a search thereunder, would be merely the illegal product of a previous unlawful search by federal authorities....

227 F.2d 598, 603 (1st Cir.1955). Mr. Carson further argues, relying on *United States v. Caldwell*, 750 F.2d 341 (5th Cir. 1984), as follows:

The test for determining whether evidence is "fruit of the poisonous tree" is "whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 343, *citing Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

On the other hand, the United States argues that in spite of any illegality of the first search, the evidence is admissible under the inevitable discovery doctrine, citing the recent United States Supreme Court case of *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The inevitable discovery doctrine means that evidence that is the product of illegal governmental conduct is nonetheless admissible if the prosecution establishes by a preponderance of the evidence that the information or evidence ultimately or inevitably would have been discovered by lawful means. In *Nix*, the defendant Williams was in custody, being transported to detainment, and there was an agreement between Williams' counsel and the police and prosecution that Williams would not be questioned in the absence of counsel. Nonetheless, when police were transporting Williams, the police initiated a casual conversation which elicited incriminating remarks from the defendant, and led the police to the body. The body was located in an area which was clearly within the area to be searched. The Court held that the evidence would have been inevitably discovered in spite of any alleged violation of the defendant's constitutional rights, and held the evidence was properly admitted at trial.

■ In the case at bar, Deputy Sheriff Branick went to the area where Mr. Carson was hunting because Mr. Branick was investigating the theft of some shotgun shells. Mr. Branick observed that the shells used by Mr. Carson were not the same number shot as those reported stolen. When Mr. Carson was away from his hunting pail, Mr. Branick searched the pail. Mr. Branick discovered an unknown number of freshly killed doves and about six cleaned or dressed doves. The United States concedes that this was an illegal search. Mr. Branick observed Mr. Carson shoot nine doves. As Mr. Branick and Mr. Carson were walking out of the field, Mr. Branick observed the remains of doves in an area where Mr. Carson picked up a shotgun he had left earlier. Mr. Branick testified he did not know from how many doves the remains came. Mr. Branick was not a game warden. Mr. Branick had no idea of what the daily bag limit was. The Court must determine, based on Mr. Branick's observation of Mr. Carson shooting nine doves and his observation of dove remains coming from an unknown number of doves, and without the benefit of Mr. Branick's illegal search, whether Mr. Branick would have inevitably secured Mr. Carson's consent to search his bucket. This Court finds that a deputy sheriff's observation of an individual shooting nine doves and the remains of some unknown number of doves in weeds would not be sufficient reason for a deputy sheriff who had no knowledge of the daily bag limit to request consent to search a hunter's pail. This Court finds that the United States has failed to prove by a preponderance of the

evidence that Mr. Branick or Mr. Sonntag would have requested consent to search the hunting pail absent the illegal search, and finds that they would not have inevitably discovered the 23 doves. Thus, this Court expressly finds that the inevitable discovery doctrine does not apply to the facts of this case.

In the final analysis, this Court views the issue as whether a voluntary consent to search will always constitute a sufficient independent act to break the causal connection between illegal governmental conduct and the challenged evidence. The Tenth Circuit Court of Appeals in the instant case stated, "[D]efendant's consent purged the second search of any taint from the first search and validated the second search for Fourth Amendment purposes." 762 F.2d at 836, *citing United States v. Fike.* Nevertheless, the Fifth Circuit Court of Appeals, in a case decided 10 years after it decided *Fike,* held that a voluntary consent given after an illegal search did not purge the taint when the consensual search yielded the same evidence previously discovered illegally. The Fifth Circuit stated, "There is no authority, however, which justifies an earlier illegal search based upon a later consent to an additional search." *Melendez-Gonzalez, supra,* at 414. This Court believes the facts of this case are governed by the *Melendez-Gonzalez* case. Specifically, under the facts of the case at bar, this Court finds that the challenged evidence derived directly from the first illegal search; Carson's consent was not independent of the illegality because the officers would not have requested consent but for the first illegal search; and defendant's consent, however voluntary, did not break the causal connection between the first illegal search and the challenged evidence discovered in the second search.

Nevertheless, this Court is hardly in a position to reverse the Tenth Circuit Court of Appeals. It is possible that when an individual's consent to a governmental search is the product of that individual's free will, the consent will always be an act so independent of the illegal governmental conduct that voluntary consent alone will vitiate the taint of the prior illegality. When, however, as the Court has found in this case, the government's request for consent to search is motivated by critical information ascertained by the prior illegal conduct of the government, this Court questions how the individual's voluntary consent alone can realign the government's actions within the bounds of the Fourth and Fourteenth Amendments. Most importantly, the Court questions a rule of law which allows the government to make a surreptitious entry into the home of a citizen, conduct an illegal wiretap or perform any other illegal conduct invasive of a citizen's privacy, and then, on the basis of the information gleaned from this illegal conduct, cajole the consent of the unwitting citizen, and then find that incriminating evidence discovered is admissible evidence in a criminal prosecution of that citizen. This Court believes that such law would fly directly in the face of the Fourth Amendment. Indeed, the Fourth Amendment protects private citizens against this very kind of governmental interference.

Nevertheless, this Court recognizes that an individual's consent, when it is knowing and completely voluntary, may be in itself an independent act sufficiently removed or attenuated from the illegal conduct of the government to permit the use of the discovered evidence in a criminal trial against that individual. In spite of the severe and fundamental problems this Court has with the application of such a rule to the facts of the case at bar, this Court is not in a position to reverse the Tenth Circuit Court of Appeals and must proceed with the disposition of this case in accordance with the Circuit Court's remand.

Therefore, the only issue which is actually before this Court is the factual determination of whether Mr. Carson voluntarily consented to the search, and this Court finds that Mr. Carson gave his full and voluntary consent to the search.

IT IS THEREFORE ORDERED this 31 day of July, 1985, in accordance with the decision of the Tenth Circuit Court of Ap-

peals, the defendant's conviction is affirmed.