**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eugene M. FIKE, Defendant-Appellant.**

**No. 30466**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 19, 1971.
Rehearing Denied Jan. 10, 1972.

Robert S. Hill, III (Court-Appointed), Hill, Robison, Belser, Brewer & Phelps, Montgomery, Ala., for defendant-appellant.

Ira de Ment, U. S. Atty., D. Broward Segrest, David B. Byrne, Jr., Asst. U. S. Attys., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal involves an allegedly unreasonable search of a stolen automobile

---

* [1]  Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

and the "fruit of the poisonous tree" doctrine.

On October 15, 1969, Eugene Marion Fike, defendant-appellant, accompanied by co-defendants Glen Wayne White and James Lawrence Davis,[1] drove a 1967 Pontiac into a used-car lot in Andalusia, Alabama. Fike and Davis went for a test drive in a Ford Ranchero, leaving the keys to the Pontiac with a car salesman on the lot. White was asleep in the Pontiac. When Fike failed to return with the Ranchero within two hours, the salesman called the Andalusia police.

The police arrived at the car lot, awakened White, and proceeded to search the car. One of the officers conducting the search testified that he asked if anyone had keys to the trunk and received the keys which Fike had given to the car salesman. According to the officer, as he was looking over the keys, White took the keys and opened the trunk. The trunk contained automobile license tags and bolt cutters. The Government did not introduce these at the trial, and the officer testified as to the results of this search only when cross-examined by defendant's counsel. After the police took White into custody and removed the car, Fike returned to the lot in the Ranchero and was also taken into custody.

Later that afternoon, while Fike was in custody in the Sheriff's office, District Attorney Cook asked for permission to search the Pontiac. Cook testified that he told Fike that, despite the fact he did not know exactly what he was looking for, anything incriminating could be used against him. Cook further testified that he informed Fike of his right to object to the search and that he should do so now if he so desired. According to Cook, Fike answered, "Go ahead and search all you want, it's not our car, it's Davis's car, Jimmy Davis's car." Fike denied making such a statement and testified that he replied, "I would rather you gentlemen didn't, I don't own the car."

The second search of the car yielded the confidential vehicle identification number from the frame of the car. The Pontiac was later identified as one stolen three days earlier. The evidence gained as a result of this search was introduced at the trial.

Fike, White, and Davis were indicted for transportation in interstate commerce of a motor vehicle, knowing it to have been stolen, in violation of the Dyer Act, 18 U.S.C. § 2312. The district court denied Fike's motion to suppress before trial, and denied a similar motion during Fike's trial after severance. The jury returned a verdict of guilty from which the defendant appeals.

Fike contends that his conviction must be reversed because the evidence which led to his conviction was obtained as a result of two separate unreasonable searches of the automobile involved in violation of his Fourth Amendment rights. Because of our disposition of the case, we shall deal with the searches in reverse order.

### I.

The second search of the Pontiac took place while the car was in the parking lot at the Covington County courthouse and the defendant was in custody in the Sheriff's office. The district court found, despite conflicting testimony, that the defendant, who was in custody and control of the automobile, consented to the search. The search was admittedly made without a warrant and was not incident to an arrest.

Consent may constitute a waiver of Fourth Amendment rights. Zap v. United States, 1946, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477. However, to be valid, a waiver must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466. "We of course recognize that consent to a search

---

1. The district court granted Davis's motion for severance. The jury found White not guilty.

is not to be lightly inferred, but should be shown by clear and convincing evidence. * * * Any consent must be voluntary and uncoerced, either physically or psychologically." Phelper v. Decker, 5 Cir. 1968, 401 F.2d 232, 236.

■ The question whether there has been a consent to a search and seizure is one of fact. Perkins v. Henderson, 5 Cir. 1969, 418 F.2d 441; Landsdown v. United States, 5 Cir. 1965, 348 F.2d 405. Despite conflicting testimony, the district court could on this record reasonably have concluded that Fike voluntarily consented to the search. The search, based on the consent of defendant, did not violate his Fourth Amendment rights, and the motion to suppress the evidence gained as a result of that search was properly denied as to this ground.

## II.

The first search of the Pontiac took place in the used car lot while Fike was test-driving the Ford Ranchero. Realizing that the testimony at the trial concerning the results of that search was elicited by defense questioning, Fike does not contend that the trial court erred in admitting this testimony. Rather, he contends that (1) the first search of the Pontiac violated his Fourth Amendment rights, and, therefore, (2) all of the evidence introduced at the trial, excluding that elicited by defense questioning but including that gained as a result of the second search, was inadmissible because it was obtained as a result of this allegedly unreasonable search and seizure. In other words, if the first search was violative of the Fourth Amendment, all evidence gained as a result of the second search must be suppressed as "fruit of the poisonous tree." The conclusion which the defendant asserts does not follow from his major premise. Assuming, but not deciding, that the first search was illegal, the evidence gained as a result of the second search was not "fruit of the poisonous tree" and is admissible.

■ The "fruit of the poisonous tree" doctrine is explained at length in Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Basically, the doctrine serves to exclude from evidence not only the direct products but also the indirect products of illegal invasions. The Court in *Wong Sun*, however, recognized that not all evidence is "fruit of the poisonous tree" requiring exclusion merely because it would not have been discovered "but for" the primary illegal invasion.

> Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' (original citations omitted)

371 U.S. at 488, 83 S.Ct. at 417.

■ It is possible that "but for" the first search the police would not have taken the car, would not have taken the defendant into custody, and would not have conducted the second search which yielded the challenged evidence. However, assuming, but not deciding, that the first search was illegal, we hold that the evidence gained as a result of the second search, the only evidence of which the defendant complains, was admissible. This is so because the voluntary consent of the defendant to the second search, found by the district court and affirmed by this Court, was an independent act sufficient to break the causal connection between the alleged primary illegality and the evidence found as a result of the second search and admitted at trial. The consent not only, as discussed above, served to validate the second search for Fourth Amendment purposes but also purged the second search of the "primary taint."

In Bretti v. Wainwright, 5 Cir. 1971, 439 F.2d 1042, this Court faced a similar question. In that case the defendant contended that the consent to a search, which led to the discovery of evidence

subsequently admitted at the trial, was "fruit" of an illegal arrest. This Court assumed the arrest was illegal without deciding the question but held that the subsequent consent was untainted. In reaching this conclusion, the Court considered (1) the absence of the use of coercive tactics in securing the consent and (2) the presence of "significant 'intervening occurrences' between the alleged illegal arrest and the acquisition of the evidence sought to be used." 439 F.2d at 1045. These "occurrences" included a warning that the defendant had a right to refuse consent, that anything found could be used against him, and that he had a right to consult with an attorney. Finding the consent voluntary and untainted, the Court assumed *sub silentio* that the causal connection was broken and the evidence seized as a result of the search based on consent was untainted and admissible.

In the case at bar, we deal not with a consent-search based on an allegedly illegal arrest but rather with a consent-search based on an allegedly illegal search. As in *Bretti*, having found the consent voluntary, we need not consider that issue. The appellant does not contend that the consent to the second search was tainted by the first search but rather that the second search itself was tainted.[2] Assuming consent, appellant argues, the second search would not have taken place "but for" the first search, and, as a result, it is tainted. In *Bretti* the search would not have taken place "but for" the arrest, yet the Court, once voluntary consent was found, determined that evidence seized as a result of the search was admissible. We feel that this reasoning applies equally well to the case at bar, where voluntary consent similarly breaks the "but for" chain and allows admissibility. *See also* Phelper v. Decker, 5 Cir. 1968, 401 F.2d 232, 236.

Consent to search has been repeatedly recognized as sufficient to waive Fourth Amendment rights. Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Zap v. United States, *supra*; Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256, 9 L.Ed.2d 1453. It is also an independent act sufficient to break any causal chain which may exist between the alleged primary illegality of the first search and the evidence seized as a result of the second search and introduced at trial. Because the evidence introduced at trial which led to the defendant's conviction was not obtained in violation of his Fourth Amendment rights, the motions to suppress were properly denied and the district court did not err in admitting the evidence.

Affirmed.

---

2. Any assertion that the consent was tainted by the first search is answered by *Bretti*. In this case, as in *Bretti*, there was a complete absence of coercive tactics and adequate warning as to appellant's right to object to the search. See also Phelper v. Decker, 5 Cir. 1968, 401 F.2d 232.