UNITED STATES of America,
Plaintiff-Appellee,

v.

Nathaniel TROUTMAN,
Defendant-Appellant.

No. 78–5597
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Richard R. Kirby, Decatur, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Robert A. Boas, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

PER CURIAM:

Defendant Nathaniel Troutman was convicted in the United States District Court for the Northern District of Georgia for possession with intent to distribute ninety-two grams of heroin hydrochloride in violation of 21 U.S.C. § 841(a)(1). He appeals to this court complaining of the legality of the search during which the heroin was discovered.

The record shows that on February 23, 1978, Paul J. Markonni, a Special Agent for the Drug Enforcement Administration, and two other officers were on duty at the Atlanta airport. At about 3:30 p. m. on that date the three officers were observing the arrival of a non-stop flight from Los Angeles, California. The defendant deplaned from that flight. Various character-istics of the defendant made the officers suspicious of him. They accosted Troutman at a taxi stand outside the terminal and asked for his identification. The court below found that there was insufficient cause to justify a stop and ruled that the stop was illegal. The government does not now challenge that ruling. We accept as correct the conclusion that Troutman was illegally stopped.

After he identified himself, Troutman was asked by Agent Markonni if he would object to a search of his person and tote bag. From this point the evidence is in sharp conflict. According to Agent Markonni's testimony Troutman said that he did not mind and started to open the bag out on the sidewalk. Markonni suggested that they step inside the terminal where they might have more privacy. Troutman stopped opening his bag and started walking back toward the terminal. They walked into the office of the Atlanta Police Bureau inside the terminal. Markonni again advised him that he was a narcotic agent, asked Troutman's permission to check both his person and his bags for narcotics, and pulled out a card from which he read Troutman his right to allow or refuse to allow a search. Troutman acknowledged that he understood his rights. Markonni said that Troutman then asked how long it would take for him to get a search warrant. Markonni replied that it would probably take a couple or three hours but that "I don't even know whether the judge would give me one," at which time Troutman said, "All right, go ahead and look." Because Markonni considered this an ambiguous answer he again stated, "All right, I have your permission to look in your bag and also to search you?" Troutman said, "Yes."

No contraband was discovered inside the tote bag. When he conducted a pat down search of Troutman he discovered something concealed in the area of his crotch. He asked Troutman to drop his trousers and found ninety-two grams of 6.5% heroin.

Troutman contends that he never gave any consent to the search, that it was con-

ducted without his permission, that he instructed the officers to get a search warrant but that they went ahead and searched him without his permission and without a warrant.

■ Credibility judgments, of course, are made by the district court. On appeal we must view the evidence in the light most favorable to the government, and must accept the lower court's findings if they are supported by substantial evidence. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Substantial evidence clearly supported the district court's findings that Markonni's version was correct. The precise question which is presented to this court, therefore, is whether a search conducted with consent, as testified to by Agent Markonni, removed the taint of the initial stop of Troutman that was clearly illegal.

*Bretti v. Wainwright*, 439 F.2d 1042 (5th Cir.), *cert. denied*, 404 U.S. 943, 92 S.Ct. 293, 30 L.Ed.2d 257 (1971) presented a fact situation that was quite similar to that now before the court. Bretti was arrested after which his home was searched. Bretti contended that his arrest was illegal and that any consent to search that he might have given was vitiated because it was predicated upon an illegal arrest. This court concluded that even if the arrest was illegal the subsequent consent was untainted under the reasoning of *Phelper v. Decker*, 401 F.2d 232 (5th Cir. 1968). The evidence supported the conclusion that Bretti was warned of his rights prior to his giving consent. Speaking through Judge Goldberg this court held,

> [Such warnings] help ensure that the consent is free, voluntary, and untainted by the arrest's possible illegality. In the instant case the presence of these warnings leads us to conclude that any coercion flowing from the possible illegality of appellant's arrest was dissipated. We therefore hold that the evidence supports the conclusion that appellant voluntarily consented to the search of his apartment.

The rule was extended in *United States v. Fike*, 449 F.2d 191 (5th Cir. 1971) to a situation where there were two searches, the first of which was assumed by the court to have been illegal. Evidence discovered during the second search, however, was held to be admissible because,

> [T]he voluntary consent of the defendant to the second search, found by the district court and affirmed by this Court, was an independent act sufficient to break the causal connection between the alleged primary illegality and the evidence found as a result of the second search and admitted at trial.

*Id.* at 193.

The importance of the warning to defendant of his rights in addition to the absence of coercive factors was underscored in *United States v. Ballard*, 573 F.2d 913 (5th Cir. 1978). That case involved a search following an illegal stop. The trial court had held that the stop was legal and that consent to the search was voluntary. In reversing this court said,

> When trying to establish that there was a voluntary consent after an illegal stop, the government has a much heavier burden to carry than when the consent is given after a permissible stop.

*Id.* at 916. The government was unable to point to a sufficient intervening occurrence such as advising the defendant of his right to refuse to permit a search. Under those facts this court concluded that defendant's consent was not voluntarily given and could not operate to remove the effects of the illegal stop.

■ In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) the Supreme Court recognized that voluntariness does not turn on the presence or absence of a single controlling criterion. It is, rather, a question of fact to be determined from the totality of the circumstances. We do not overturn a trial court's holding on this question unless it is clearly erroneous. *United States v. Durham*, 587 F.2d 799 (5th Cir. 1979). The record before us clearly supports the finding that Troutman's consent was freely and voluntarily given, that he had been twice advised of his

rights, including the right to refuse consent, and that the search was not the product of coercive conduct. Under the rule of *Bretti v. Wainwright, supra,* the search was legal and Troutman's conviction must be affirmed.

AFFIRMED.