UNITED STATES of America, Plaintiff-Appellee,

v.

George L. CARSON, Defendant-Appellant.

No. 85–2217.

United States Court of Appeals, Tenth Circuit.

June 9, 1986.

Logan, Circuit Judge, concurred and filed an opinion.

Benjamin L. Burgess, Jr., U.S. Atty. (Robin D. Fowler, Asst. U.S. Atty., with him on brief), Wichita, Kan., for plaintiff-appellee.

Michael S. Holland, Russell, Kan., for defendant-appellant.

Before BARRETT, LOGAN, and BALDOCK, Circuit Judges.

BARRETT, Circuit Judge.

Defendant-appellant, George L. Carson, was charged by information with the unlawful possession of doves contrary to the migratory bird treaties among the United States, Great Britain, and the United Mexican States in violation of 16 U.S.C. § 703 and 50 C.F.R. §§ 20.35 and 20.72. Carson was found guilty and sentenced by a United States Magistrate on March 8, 1983. Carson appealed the magistrate's decision to the District Court for the District of Kansas, and on November 10, 1983, the district court reversed the magistrate and dismissed the action finding that the evidence introduced against Carson was the product of an illegal search.

The Government appealed to this court from the district court's order pursuant to 18 U.S.C. § 3731. Relying on the opinion of the United States Court of Appeals for the Fifth Circuit in *United States v. Fike*, 449 F.2d 191 (5th Cir.1971), we held that Carson's consent to a police search of his vehicle purged the taint of an illegal prior search. *United States v. Carson*, 762 F.2d 833, 836 (10th Cir.1985) (*Carson I*). In *Carson I* we remanded the case to the

district court to determine whether Carson's consent to the subsequent search was voluntary.

On remand, the district court found, among other things, that Carson's consent to the search was voluntary. (R., Vol. I, p. 148). Consequently, the district court reinstated Carson's original conviction. Carson now appeals from the district court's order on the ground that this court was clearly erroneous in *Carson I* in relying on *United States v. Fike, supra,* and in failing to recognize, consider or apply the holding of *United States v. Melendez-Gonzalez,* 727 F.2d 407 (5th Cir.1984), or the constitutional principles applicable to evidence seized as a direct result of a prior illegal search.

**I.**

The facts before us in this appeal are the same as those in *Carson I.* For the sake of clarity, however, we set out our statement of facts from *Carson I,* 762 F.2d at 834–35, below:

On September 1, 1982, the defendant was hunting doves in Russell County, Kansas. Joe Branick, a Russell County deputy sheriff approached him and observed him shooting nine doves. Tr. Vol. II, p. 4–5. While defendant was hunting, Branick looked into a five gallon pail and observed under a vest at least six dressed doves. Id. at 6. Branick also observed the remains of doves scattered on the tops of tall weeds in the field where defendant was hunting. Id. at 7. Branick concluded that these remains were fresh based on the way they clung to the weeds and the color of the blood. Id. Branick then got in touch with Doug Sonntag, a State Game Protector employed by the Kansas Fish and Game Commission concerning the legality of defendant's bag possession. Branick and Sonntag returned to the area where defendant was hunting and asked him for permission to search his pickup. Defendant consented, unlocked the vehicle, took out the pail, and sat in front of Sonntag, who picked up 12 freshly killed doves, lifted up a vest and removed 11 dressed doves. Id. at 11. Sonntag testified that it was his opinion that the dressed doves had been killed earlier that day because they were still warm, of a light pinkish color and their blood was wet and sticky. Tr. Vol. III, p. 11. A second State Game Protector, Madora, handled the doves later that evening and concurred with Sonntag that the dressed doves had been killed that day. Id. at 25, 27–28.

At trial before the magistrate and during cross-examination, Branick admitted that he lifted up the vest in order to observe the dressed doves. Tr. Vol. II, p. 22. Defendant objected to the evidence from this search later during testimony from Sonntag. Id. at 45. The trial was continued to allow the defendant to file and brief a motion to suppress. Id. at 55–57. The magistrate ruled on May 12, 1983, without a suppression hearing, that the defendant had waived his right to object to the evidence because he failed to file a pre-trial motion to suppress the evidence as required by Fed.R. Crim.P. 12(b)(3). The trial resumed May 23, 1983 and the defendant was found guilty.

The defendant appealed the judgment to the district court who found that the magistrate had abused his discretion in failing to hear the reason for the defendant's failure to file the pre-trial motion to suppress and for failing to address the question of whether the search was legal. The trial court then set aside the conviction and dismissed the action because it determined that Branick's search was illegal.

In *Carson I,* we affirmed the district court's ruling that the magistrate erred in refusing to grant defendant relief from the waiver provision of Rule 12(f) of the Federal Rules of Criminal Procedure. *Id.* at 835. We also agreed with the district court that the first search by Branick, in which he picked up the vest to reveal the six dressed doves, was in violation of the Fourth Amendment. *Id.* We noted, however, that neither the district court nor the magis-

trate discussed the validity and effect of the subsequent consensual search. *Id.*

Before considering the validity and effect of the consensual search, we quoted the defendant's testimony regarding the second search as follows:

The officers returned to the area and encountered defendant at his pickup. Defendant testified, Tr. Vol. III, pp. 60–64:

"Q. What occurred when the two of them came to the pickup?

A. We stood around talking a little bit, and just visiting. Mr. Branick said, well George, he said, I want to tell you that I think you shot too many doves and I couldn't believe it. I thought, uh, oh, here we go again. So I asked him, I said what makes you think that? And he said because I saw some feathers and some blood and something else, he said, sticking in some weeds or something, which I never did see, quite frankly.

Q. Did he tell you at that time he had searched your bucket?

A. No, he did not.

Q. Okay, what else did he say?

A. Well, he asked again, Mr. Branick asked if he could ... if they could look into my pickup and I said, well certainly....

Q. What happened then?

A. We got back to the ... the pickup where the vehicles were. I unlocked the truck on the driver's side. I reached across the passenger side and got the bucket and brought it out toward the rear of my pickup and set it on the ground. Mr. Sonntag then proceeded to take the freshly killed undressed doves off the top of the hunting jackets, laid them on the ground. Then he lifted out two hunting jackets, then lifted off the plastic bag....

Q. Now, in regard to the doves, how many dressed doves were there?

A. There were 12."

*Carson I*, 762 F.2d at 835–36. In light of this testimony, we held in *Carson I* that Carson's consent to the second search

purged the evidence obtained thereby of any taint from the unlawful first search. We supported our holding relying exclusively on the Fifth Circuit's decision in *United States v. Fike, supra. Carson I,* 762 F.2d at 836. Recognizing, however, that the admissibility of the evidence obtained through the second search depended upon whether Carson's consent was voluntary under *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), a finding not made by either the magistrate or the district court, we remanded the issue to the district court as follows:

The argument [by the Government] is that the defendant's consent to the second search was brought to the attention of the trial court but not considered by it. Because the validity of the second search involves a question of fact, the voluntary consent to the second search, the district court, on remand, may wish to remand the case to the magistrate for determination of the facts.

*Id.* at 837.

On remand the district court found that Carson's consent to the second search was voluntary:

This Court, having reviewed the transcript and record of trial proceedings before the Magistrate ... finds that under the totality of the circumstances, Mr. Carson's consent was the product of his own free will and unconstrained choice. The Court finds that Mr. Carson's consent to the search was voluntary.

(R., Vol. I, p. 137.) Based on this factual determination the district court reinstated and affirmed Carson's conviction by the magistrate. (R., Vol. I, p. 148.)

In the instant appeal, Carson challenges his conviction contending that this court clearly erred in *Carson I* in holding that "defendant's consent purged the second search of any taint from the first search." *Carson I,* 762 F.2d at 836. First, Carson contends we clearly erred in *Carson I* in relying on *United States v. Fike, supra,* in light of the Fifth Circuit's subsequent deci-

sion in *United States v. Melendez-Gonzalez, supra,* and constitutional principles articulated by the Supreme Court. Second, Carson contends that even if the subsequent consensual search purges the taint of the prior illegal search, the evidence should be excluded because it was obtained as a direct result of the initial illegal search.

## II.

■ Before considering the merits of this appeal, two procedural issues raised by the parties should be addressed. First, Carson contends that the Fifth Circuit's decision in *United States v. Melendez-Gonzalez, supra,* sets forth the appropriate rule of law applicable to *Carson I* and effectively overrules the Fifth Circuit's decision in *United States v. Fike, supra,* relied upon by this court in *Carson I.* "*United States v. Melendez-Gonzalez,* 727 F.2d 407 (5th Cir.1984), not cited by this court in its initial *Carson* opinion, fully discusses the doctrine of 'consent to search,' its legal consequences and specifically rejected this court's holding that evidence derived from the first illegal search is admissible based upon a subsequent consent to search. *Id.* at 413–14." (*Appellant's Brief,* p. 11.) It is well settled that the decisions of one circuit court of appeals are not binding upon another circuit. *Newsweek, Inc. v. United States Postal Service,* 663 F.2d 1186, 1196 (2d Cir.1981), *affirmed,* 462 U.S. 810, 103 S.Ct. 2717, 77 L.Ed.2d 195 (1983). While we often rely upon the analysis and decisions of other circuit courts of appeals, as we did in *Carson I,* we are not bound by their decisions or modifications of those decisions. As such, we are not bound by any modifications of *United States v. Fike, supra,* by subsequent Fifth Circuit decisions. We do not believe that *United States v. Melendez-Gonzalez, supra,* sets forth the correct rule of law nor are we in any way bound by it.

■ Second, the Government argues that *Carson I* is law of the case which limits our review in the instant appeal to the district court's factual finding that Carson's consent was voluntary. We recognize that law of the case is not a jurisdictional rule; rather it is a rule to be applied at the sound discretion of the court to effectuate the proper administration of justice:

"In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson,* 225 U.S. 436 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152. The practice is not rigidly binding, but generally an appellate court will not depart from a rule of law established on an earlier appeal in deciding the same issues, except for cogent reasons. *Bromley v. Crisp,* 561 F.2d 1351, 1363 (10th Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978). Considering Carson's arguments and the district court's observations regarding our holding in *Carson I,* we believe the administration of justice in this circuit will be furthered by our review and application of the *Carson I* rule here. We therefore decline to limit our review to the district court's finding that Carson's consent was voluntary.

## III.

### A.

■ The precise legal issue which Carson raises in the case at bar is whether voluntary consent to a search necessarily means that the evidence is obtained free of police exploitation of the fruits of prior unlawful conduct or is obtained in a manner sufficiently distinguishable from the prior illegality to purge the evidence of the primary taint. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). We reaffirm our rule in *Carson I.* We hold that *voluntary* consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary

illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of the primary taint.

Our holding is supported by the United States Supreme Court's opinion in *Wong Sun v. United States, supra.* In *Wong Sun, supra,* at 487, 83 S.Ct. at 471 the Supreme Court considered whether evidence seized as a result of prior, illegally obtained statements should be excluded as "fruits of the poisonous tree." The Court noted that under the facts of *Wong Sun,* neither one of the two established exceptions to the "fruit of the poisonous tree" doctrine, the independent source rule, *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920), nor the attenuation doctrine, *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939), applied to cure the taint of the primary illegality. Nonetheless, the Court held that even though evidence would not have come to light *but for* prior illegal police conduct, such evidence is not inadmissible *per se*:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

*Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. at 417. The rule of *Wong Sun* is quite clear: evidence should not be excluded as a "fruit of the poisonous tree" simply because it comes to light as a result of prior illegal police activity; rather evidence, the knowledge of which is obtained as a result of prior police illegality, is admissible so long as (1) it has not been subsequently obtained through exploitation of that illegality, or (2) it has been subsequently obtained by means sufficiently distinguishable from the prior illegality to purge the evidence of the taint. *Accord, Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

■ Before proceeding further, however, we believe it will be useful for purposes of this opinion to discuss the implications of this pivotal language from *Wong Sun.* We note that in the first sentence of the above-quoted language of *Wong Sun,* the Supreme Court rejected a "but for" exclusionary rule for evidence which comes to light as a result of illegal actions of the police. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1978); *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1974). *See also, United States v. Fallon,* 457 F.2d 15, 20 (10th Cir.1972) ("the [evidence] would not have been obtained had the defendant not been stopped and detained. However, we do not read the *Wong Sun* case as holding that a "but for" factual connection is legally sufficient [to render the evidence inadmissible]"). As the Supreme Court makes quite clear, for purposes of the "fruit of the poisonous tree" doctrine, the issue of whether evidence is admissible is not resolved by determining that the actions of the police in obtaining evidence were completely lawful. The issue is resolved by determining whether the evidence is obtained either free of exploitation of police illegality or by means sufficiently distinguishable to purge the taint of the illegality.

■ Unfortunately, the Supreme Court has not defined the terms "exploitation" or "sufficiently distinguishable" used in *Wong Sun.* For purposes of this opinion, it is important to define what we believe the Supreme Court intended when it adopted and employed these terms. In the context of voluntary consent, we hold that "exploitation of the primary illegality" means that the police use the fruits of the primary illegality to coerce defendant into *granting* his consent.

■ Evidence obtained pursuant to consent "has been come at" by defendant's

*grant* of consent, not by the police request, regardless of how reasonable the request might be. The exploitation issue focuses solely on defendant's *grant* of consent, not on the bare request, or the reasons underlying it. While the police may exert coercion in the *manner* in which they *request* defendant's consent, the request itself, even if motivated by the fruits of the prior illegality, is not exploitation. As the Supreme Court recently stated in *Moran v. Burbine,* —— U.S. ——, ——, 106 S.Ct. 1135, 1141–42, 89 L.Ed.2d 410 (1986): "[T]he state of mind of the police is irrelevant to the question of the intelligence and voluntariness of [defendant's] election to abandon his rights."

■ Under the Fourth Amendment, evidence obtained pursuant to defendant's consent is admissible only if defendant's grant of consent is voluntary under the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973). Therefore, in a case in which evidence is obtained pursuant to consent granted subsequent to illegal police actions, the "exploitation" issue under *Wong Sun* is resolved simply by determining whether or not defendant's *grant* of consent was voluntary under the totality of the circumstances. The police officers' reason or basis for asking for defendant's consent is irrelevant to the "exploitation" issue unless the manner in which the police officers request consent renders defendant's consent involuntary. When defendant's grant of consent is voluntary, then there is no exploitation; as we will discuss *infra,* the findings of voluntary consent and "exploitation" are mutually exclusive.

■ We also hold that in the context of voluntary consent, the "sufficiently distinguishable" standard in *Wong Sun* refers to means of obtaining evidence substantially independent of the prior illegality. This standard contemplates an exception different than the "independent source rule" or the "attenuation doctrine" expressly found not to apply in *Wong Sun.* The "independent source rule" states that while knowledge of facts illegally acquired may not be used at all against defendant, the knowledge of these facts may be used against defendant if it is gained from an independent source. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). We do not believe the independent source rule applies when the police request consent to search based on the knowledge of facts illegally acquired. Yet, in *Wong Sun,* the Court held that even though the independent source rule or the attenuation doctrine did not apply, evidence obtained is not necessarily inadmissible merely because it comes to light as a result of illegal police actions. The "sufficiently distinguishable" inquiry, then, does not turn on whether the evidence is obtained by an independent source; rather, the inquiry turns on whether the evidence is obtained by means, although influenced by prior illegal police actions, which are different enough from the prior illegality to be "sufficiently distinguishable." Because it is the grant of consent not the request for consent which validates evidence seized thereby, we hold consent to search, if voluntary, is a sufficiently distinguishable means of obtaining evidence from other prior illegal police actions to purge the evidence of the primary taint.

We believe our definitions of the standards articulated in *Wong Sun* are necessary to effectuate the Supreme Court's analysis. The Supreme Court's rejection of a "but for" exclusionary rule and the Court's adoption of the *Wong Sun* standards would be meaningless were we to hold that evidence obtained pursuant to consent is inadmissible when a police *request* to search is predicated upon prior illegal police actions. We would be hard pressed to find any fact situation in which evidence obtained pursuant to voluntary consent could ever be purged of the taint of the prior illegality. Because the authority to search in a consent case arises out of defendant's grant of consent, under *Wong Sun,* the "exploitation" standard must focus on the voluntariness of defendant's consent, not the police officers' reasons for

requesting consent. Likewise, the "sufficiently distinguishable" standard focuses on the method by which evidence is obtained. In a consent case, because the method of obtaining evidence is the defendant's grant of consent, the "sufficiently distinguishable" standard focuses on the grant of consent and not on the police officers' reasons for attempting to use that method of obtaining evidence.

**B.**

We next decide what standard of "voluntariness" satisfies either one of the two *Wong Sun* standards. We hold that the tests articulated by the Supreme Court and this court to determine Fourth Amendment "voluntariness," satisfy, by definition, either *Wong Sun* standard. In *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973), the Supreme Court held that consent to a Fourth Amendment search must be voluntary *in fact* and free of coercion under the totality of the circumstances:

> We hold only that when ... the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that [the Government] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

This court has set out a three-tiered standard for determining whether the Government has sustained the burden of showing that consent to search was in fact voluntary under *Schneckloth v. Bustamonte, supra:*

(1) There must be clear and positive testimony that consent was "unequivocal and specific" and "freely and intelligently" given; (2) the government must prove consent was given without duress

or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived.

*United States v. Abbott,* 546 F.2d 883, 885 (10th Cir.1977), citing *Villano v. United States,* 310 F.2d 680, 684 (10th Cir.1962). *See also, United States v. Gay,* 774 F.2d 368, 376 (10th Cir.1985); *United States v. Recalde,* 761 F.2d 1448, 1453 (10th Cir. 1985). It is clear that Fourth Amendment "voluntariness" requires a showing by the Government that defendant's consent is free of police coercion and is voluntary *in fact.* By definition, then, Fourth Amendment "voluntariness" necessarily requires a finding by the district court that the evidence was obtained freely and not by police "exploitation of [the primary] illegality...." *Wong Sun, supra,* 371 U.S. at 487–88, 83 S.Ct. at 417, making the two findings mutually exclusive. Moreover, under *Wong Sun,* a search conducted pursuant to voluntary consent is a sufficiently distinguishable means of obtaining evidence to purge it of the taint of the primary illegality.

While "voluntariness" for Fourth Amendment consent satisfies the *Wong Sun* standards, the tests for "voluntariness" to waive other constitutionally protected rights differ and therefore do not necessarily satisfy the *Wong Sun* standards. For example, the standard of "voluntariness" for consent to waive Fourth Amendment rights differs from the standard of "voluntariness" for consent to waive Fifth Amendment rights. A valid waiver of Fourth Amendment rights may not be presumed but may only be effected when the Government discharges its burden of proving that defendant's consent is voluntary *in fact;* a valid waiver of Fifth Amendment rights may be presumed when an incriminating statement is made by defendant *after* he is given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Oregon v. Elstad,* —— U.S. ——, ——,

105 S.Ct. 1285, 1292–94, 84 L.Ed.2d 222 (1985). Yet, while statements may be made pursuant to an otherwise valid, voluntary waiver of Fifth Amendment rights, Fifth Amendment "voluntariness" does not necessarily purge the taint of an underlying Fourth Amendment violation, such as an illegal arrest. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The distinctions among the standards of voluntariness has led to confusion in many cases. We believe that *Brown v. Illinois, supra*, clarifies the law in this area.

In *Brown v. Illinois, supra*, the Supreme Court held that the mere giving of "*Miranda* warnings, *alone* and *per se*, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." *Id.* at 603 and 605, 95 S.Ct. at 2261 and 2262–63. Noting the differences between the Fourth and Fifth Amendments with respect to consent, the Court stated that *Miranda* warnings, which establish Fifth Amendment voluntariness, must be considered with other factors, such as the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct, evaluated upon the facts of each case, for the trial court to determine "whether a confession is the product of a free will under *Wong Sun* ...." *Id.* at 603–04, 95 S.Ct. at 2261–62.

The implication of the Supreme Court's decision in *Brown v. Illinois* is that in order for incriminating statements to be purged of the taint of an underlying Fourth Amendment violation, defendant's consent must meet the voluntariness standard of the Fourth Amendment.

[A]lthough a confession after proper *Miranda* warnings may be found "voluntary" for purposes of the Fifth Amendment, this type of "voluntariness" is merely a "threshold requirement" for Fourth Amendment analysis, 422, U.S. at 604 [95 S.Ct. at 2262]. Indeed, if the Fifth Amendment has been violated, the Fourth Amendment issue would not have to be reached.

Beyond this threshold requirement, *Brown* articulated a test designed to vindicate the "distinct policies and interests of the Fourth Amendment." *Id.*, at 602 [95 S.Ct. at 2262].....

*Dunaway v. New York*, 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1978) (footnote omitted) citing *Brown v. Illinois, supra*.

 We believe that to the extent the Government is required to show attenuation between the primary police illegality and the evidence obtained beyond the Fifth Amendment "voluntariness" standard, the Supreme Court intended in *Brown v. Illinois, supra*, that a defendant's consent to waive his Fifth Amendment rights also meet the Fourth Amendment "voluntariness" standard to satisfy either *Wong Sun* standard. The Supreme Court concluded its opinion noting that the holding in *Brown v. Illinois* is a limited one: "We decide only that the Illinois courts were in error in assuming that the *Miranda* warnings, by themselves, under *Wong Sun* always purge the taint of an illegal arrest." *Id.* 422 U.S. at 605, 95 S.Ct. at 2262–63. Fourth Amendment voluntariness is not a "threshold requirement;" it is the sole constitutional requirement for determining whether "the taint of a prior illegality" has been purged under *Wong Sun*.

 To summarize, under *Wong Sun*, illegal police actions do not *necessarily* render inadmissible all verbal or physical evidence obtained subsequent to and as a result of the illegal police conduct. Likewise it is clear under *Brown v. Illinois*, that adherence to minimal procedural requirements such as the giving of *Miranda* warnings, does not *necessarily* establish "voluntariness" sufficient to purge evidence of the taint of prior Fourth Amendment violations. *Brown v. Illinois, supra*, implies that consent must be voluntary *in fact* (the Fourth Amendment voluntariness standard) in order for defendant's consent both to act as a waiver of constitutional rights and to render evidence sufficiently indepen-

dent of any previous Fourth Amendment violation to purge it of the primary taint. The factors articulated in *Brown v. Illinois* are examples of the kinds of facts which a court should consider in addition to the threshold finding of Fifth Amendment voluntariness to bring defendant's consent within Fourth Amendment voluntariness standards.

## IV.

We hold that the law of this circuit, that consent which is voluntary for purposes of the Fourth Amendment satisfies either *Wong Sun* standard, is consistent with the Supreme Court's decisions interpreting *Wong Sun* and the Fifth Circuit's decision in *United States v. Fike, supra.* We reject Carson's proposed analysis to the contrary and his reliance on *United States v. Melendez-Gonzalez, supra,* as a correct statement of the law.

In *United States v. Fike, supra,* defendant left a stolen automobile with a car dealer while he test drove one of the dealer's vehicles. Defendant failed to return the vehicle within two hours and the dealer called the police to the car lot. There the police searched the stolen automobile, removed it to the sheriff's office, and arrested defendant. While in custody, defendant consented to a second police search of the automobile. The second search yielded the vehicle identification number from the frame of the car which was admitted at trial. Automobile license tags and bolt cutters observed in the trunk as a result of the first search were not introduced at trial.

On appeal defendant challenged the legality of both searches. The court explained defendant's argument as follows: "The appellant does not contend that the consent to the second search was tainted by the first search but rather that the second search itself was tainted. Assuming consent, appellant argues, the second search would not have taken place 'but for' the first search, and, as a result, it is tainted." *United States v. Fike,* 449 F.2d at 194 (footnote omitted). The Fifth Circuit rejected defendant's "but for" analysis rendering the evidence inadmissible:

It is possible that "but for" the first search the police would not have taken the car, would not have taken the defendant into custody, and would not have conducted the second search which yielded the challenged evidence. However, assuming, but not deciding, that the first search was illegal, we hold that the evidence gained as a result of the second search, the only evidence of which the defendant complains, was admissible. This is so because the voluntary consent of the defendant to the second search, found by the district court and affirmed by this Court, was an independent act sufficient to break the causal connection between the alleged primary illegality and the evidence found as a result of the second search and admitted at trial. The consent not only, as discussed above, served to validate the second search for Fourth Amendment purposes but also purged the second search of the "primary taint."

*Id.* at 193. Relying on its earlier opinion in *Bretti v. Wainwright,* 439 F.2d 1042 (5th Cir.), *cert. denied,* 404 U.S. 943, 92 S.Ct. 293, 30 L.Ed.2d 257 (1971), the court concluded that as a matter of law voluntary consent is an independent act sufficient to break the causal connection between prior illegal activity and a subsequent search.

In *Bretti* the search would not have taken place "but for" the arrest, yet the Court, once voluntary consent was found, determined that evidence seized as a result of the search was admissible. We feel that this reasoning applies equally well to the case at bar, where voluntary consent similarly breaks the "but for" chain and allows admissibility.

Consent to search has been repeatedly recognized as sufficient to waive Fourth Amendment rights. It is also an independent act sufficient to break any causal chain which may exist between the alleged primary illegality of the first search and the evidence seized as a result of the second search and introduced at trial.

*United States v. Fike,* 449 F.2d at 194 (citations omitted).

*United States v. Melendez-Gonzalez, supra,* which Carson contends is contrary to and overrules *United States v. Fike, supra,* involved the stop of an automobile by a roving border patrol to search for illegal aliens. Law enforcement agents conducted a search of the vehicle at the time of the stop. Upon opening the trunk, the law enforcement agents smelled marijuana. No evidence was seized at that time and the defendant was taken to the nearest police station. Defendant signed a consent to search form after the agents gave *Miranda* warnings and advised him of his right to refuse to sign the consent form.

The Fifth Circuit held that both the stop and the ensuing roadside search were illegal because the agents did not have probable cause for either. The court also held that even if the initial stop were lawful, the roadside search would nonetheless be illegal because it was neither supported by probable cause nor conducted pursuant to voluntary consent. *Id.* at 412–13. Finally the court reversed the district court's finding and conclusion that the defendant's consent to the second search at the police station "was voluntarily given, and that such consent vitiates the allegedly illegal stop." *United States v. Melendez-Gonzalez,* 727 F.2d at 413. In reversing the district court, the Fifth Circuit held, without citing *United States v. Fike, supra:*

> We do not dispute the fact that defendant actually signed the consent form or even that he did so voluntarily. Further, we accept the well-established rule that "a search conducted pursuant to consent is excepted from requirements of probable cause on a warrant." There is no authority, however, which justifies an earlier illegal search based upon the later consent to an additional search.
>
> ... In the present case, defendants' reasonable expectation of privacy was violated on the highway when the agents sprung the trunk and first smelled marijuana. The fact that the agents did not continue their exploration at this point

does not make their actions any less a "search." Since for all practical purposes, the search was conducted on the highway, the consent form which defendants signed at the station simply came too late.

*Id.* at 413–14 (citations omitted). We agree that voluntary consent to search given after an illegal search, does not transform the prior illegal search into a legal one. We disagree with the Fifth Circuit, however, to the extent *Melendez-Gonzalez* holds that *evidence* is not purged of the taint of prior illegal police activity when a subsequent search, to which the defendant voluntarily consents, yields that evidence.

*Melendez-Gonzalez* indicates that in the Fifth Circuit something more than Fourth Amendment "voluntariness" is needed for defendant's consent to purge the taint of prior illegal police activity. For example, in reviewing the district court's factual finding regarding defendant's consent to the roadside search, the court set forth its standard for determining whether consent purges the taint of prior illegality:

> When attempting to prove voluntary consent to search following an illegal stop, the Government has a much heavier burden to satisfy than when proving consent to search after a legitimate initial stop. *In addition to proving valid and voluntary consent to search,* the Government must also establish the existence of intervening factors which prove that the consent was sufficiently attenuated from the illegal stop....

*Id.* at 414–15 (citations omitted and emphasis added). We do not believe that under *Wong Sun, supra,* or *Brown v. Illinois, supra,* the Government is required to show attenuation beyond a finding of voluntary, valid consent under Fourth Amendment standards. We reject the Fifth Circuit's analysis in *Melendez-Gonzalez,* to the extent it is contrary to the Fifth Circuit's earlier decision in *United States v. Fike, supra,* which we believe more clearly and accurately states the applicable law. Moreover, the law in the Tenth Circuit is consistent with *United States v. Fike, supra.*

In *United States v. Sor-Lokken,* 557 F.2d 755 (10th Cir.1977), defendant's ex-wife permitted law enforcement officers to enter defendant's house to examine unregistered firearms. Defendant's ex-wife did not own the house but became aware of the weapons' existence while visiting her children who were in defendant's custody and living at his home. When defendant fled his home due to the commencement of a child neglect investigation, defendant's ex-wife obtained access to the house and notified the police of the unregistered weapons. Based upon unauthorized consent to search granted by the ex-wife, the police searched the house and seized one weapon.

Later that day, the same officers returned to defendant's residence to seize the remaining weapon. This time defendant's friend, with whom defendant left a key to the house and a handwritten, notarized note permitting the friend's access to the property, consented to the officers' search of the premises. This search resulted in the seizure of the second unregistered weapon.

We held that the first search of the premises, to which defendant's ex-wife had consented, was an unlawful search. We also held, however, that the second search was valid because defendant's friend possessed sufficient authority to consent to a search of defendant's residence and did so voluntarily. Defendant argued that regardless of the authorized consent to search, the weapon seized in the second search was inadmissible as the direct result of the prior illegal search which was the "but for" cause of the second search. Relying upon the Supreme Court's opinion in *Wong Sun,* we rejected defendant's argument:

> Even if it were demonstrated that the officers' afternoon search was a necessary prerequisite to the evening search, the carbine would still be unsusceptible to exclusion.
>
>> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police.

Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint'." *Wong Sun v. United States, supra,* 371 U.S. at 487, 488, 83 S.Ct. at 417.

Consent to search satisfies Fourth Amendment requirements apart from the presence or absence of probable cause to conduct a search. The consent obtained in this case purged the disputed search of any possible taint.

*United States v. Sor-Lokken,* 557 F.2d at 758.

More recently, we held that consent may purge the taint of a prior illegality. In *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985) defendant challenged the admissibility of evidence obtained pursuant to his written consent to search his vehicle executed at a police station following his unlawful roadside seizure and detention. We noted the effect of consent following illegal police action as follows:

> The Supreme Court has consistently held that evidence obtained after an illegal arrest or seizure must be suppressed as the fruit of the illegal detention. There is, however, no per se rule prohibiting use of such evidence, and a defendant's consent may, *under certain circumstances,* remove the taint of an illegal detention.

*Id.* at 1457 (citations omitted and emphasis added). The circumstances under which defendant's consent removes the taint of a prior illegal police action is when consent is voluntary under the totality of the circumstances.

In *Recalde,* we reviewed the facts to determine whether or not defendant's station-house consent was voluntary. We reversed, holding that under the facts of *Recalde,* the district court's finding of valid voluntary consent was clearly erroneous. *Id.* at 1458.

## V.

We believe the facts of the case at bar illustrate precisely the reasons for the rule which we reaffirm here. We hold, as we did in *Carson I*, that the initial search by Deputy Sheriff Branick of Carson's bucket containing the dressed doves was illegal. Carson, however, was not aware of the initial illegal search. (R., Vol. I, p. 136.) When Deputy Sheriff Branick and Mr. Sonntag later returned to the scene, Carson willingly agreed to let them look into his pickup truck. The district court found that "Mr. Carson's consent was the product of his own free will and unconstrained choice. The Court finds that Mr. Carson's consent to the search was voluntary." (R., Vol. I, p. 137.)

There is no evidence in the record showing that the officers used information obtained in the prior illegal search to coerce Carson into consenting to the subsequent search.[1] Carson waived his Fourth Amendment rights by voluntarily consenting to a search, independent of the prior police activity of which he did not know. As the Supreme Court recently stated in *Moran v. Burbine*, ── U.S. ──, ──, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986): "Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." We see no reason to permit Carson to reassert those rights or to exclude evidence lawfully obtained through the consensual search.

In addition, and contrary to Carson's contention, we place no significance on the fact that the doves seized in this case were the same evidence illegally observed as a result of the prior search by Deputy Sheriff Branick. The means by which the evidence was ultimately seized was constitutional (voluntary consent) and sufficiently distinguishable from the underlying illegality. While we agree that the prior illegal search is not rendered legal by Carson's subsequent consent, so that Deputy Sheriff Branick would be precluded from testifying about his observations and knowledge obtained as a result of the illegal search, we hold the *evidence* is nonetheless purged of the primary illegality and is admissible because it was legally obtained pursuant to voluntary consent.[2]

In the Memorandum and Order of August 1, 1985, the district court commented upon the rule set forth in *Carson I*. We believe our response to the district court's following observations will help to explain our holding.

In the final analysis, this Court views the issue as whether a voluntary consent to search will always constitute a sufficient independent act to break the causal connection between illegal governmental conduct and the challenged evidence. The Tenth Circuit Court of Appeals in the instant case stated, "[D]efendant's consent purged the second search of any taint from the first search and validated the second search for Fourth Amendment purposes." Slip op. at 7, [762 F.2d at 836] *citing United States v. Fike*. Nevertheless, the Fifth Circuit Court of Appeals, in a case decided 10 years after it decided *Fike*, held that a voluntary consent given after an illegal search did

---

1. If there were evidence of coercion in the manner in which the police requested Carson's consent, that evidence would affect the determination of whether defendant's consent was voluntary. If a district court were to find, after a factual determination, that consent to a search was involuntarily given, we would be left with the inescapable conclusion that the police officers exploited the original illegality and that defendant's consent was insufficiently distinguishable to purge the primary taint.

2. We intend to distinguish between evidence illegally *perceived* and illegally *seized*. If police officers seize evidence pursuant to an illegal search then it is inadmissible under our rule, regardless of defendant's subsequent consent to search; the evidence having been obtained as a direct result of an unconstitutional search and seizure. If evidence is merely perceived as a result of an illegal search and police officers seize it pursuant to a subsequent consensual, valid search, then it is admissible; the evidence having been obtained as the result of a constitutional search and seizure independent of any previous illegality.

not purge the taint when the consensual search yielded the same evidence previously discovered illegally. The Fifth Circuit stated, "There is no authority, however, which justifies an earlier illegal search based upon a later consent to an additional search." *Melendez-Gonzalez, supra,* at 414. This Court believes the facts of this case are governed by the *Melendez-Gonzalez* case. Specifically, under the facts of the case at bar, this Court finds that the challenged evidence derived directly from the first illegal search; Carson's consent was not independent of the illegality because the officers would not have requested consent but for the first illegal search; and defendant's consent, however voluntary, did not break the causal connection between the first illegal search and the challenged evidence discovered in the second search.

Nevertheless, this Court is hardly in a position to reverse the Tenth Circuit Court of Appeals. It is possible that when an individual's consent to a governmental search is the product of that individual's free will, the consent will always be an act so independent of the illegal governmental conduct that voluntary consent alone will vitiate the taint of the prior illegality. When, however, as the Court has found in this case, the government's request for consent to search is motivated by critical information ascertained by the prior illegal conduct of the government, this Court questions how the individual's voluntary consent alone can realign the government's actions within the bounds of the Fourth and Fourteenth Amendments. Most importantly, the Court questions a rule of law which allows the government to make a surreptitious entry into the home of a citizen, conduct an illegal wiretap or perform any other illegal conduct invasive of a citizen's privacy, and then, on the basis of the information gleaned from this illegal conduct, cajole the consent of the unwitting citizen, and then find that incriminating evidence discovered is admissible evidence in a criminal prosecu-

tion of that citizen. This Court believes that such law would fly directly in the face of the Fourth Amendment. Indeed, the Fourth Amendment protects private citizens against this very kind of governmental interference.

Nevertheless, this Court recognizes that an individual's consent, when it is knowing and completely voluntary, may be in itself an independent act sufficiently removed or attenuated from the illegal conduct of the government to permit the use of the discovered evidence in a criminal trial against that individual. In spite of the severe and fundamental problems this Court has with the application of such a rule to the facts of the case at bar, this Court is not in a position to reverse the Tenth Circuit Court of Appeals and must proceed with the disposition of this case in accordance with the Circuit Court's remand.

Therefore, the only issue which is actually before this Court is the factual determination of whether Mr. Carson voluntarily consented to the search, and this Court finds that Mr. Carson gave his full and voluntary consent to the search.

(R., Vol. I, pp. 146–48.)

The district court correctly states that under our rule in *Carson I,* defendant's consent to a search, so long as it is voluntary *in fact,* constitutes a sufficiently independent act to purge the evidence of the taint of the prior illegal Government conduct. This is so even when defendant's voluntary consent, granted after an illegal search, yields the same evidence previously discovered illegally.

■ We disagree, however, with the district court's finding that "Carson's consent was not independent of the illegality because the officers would not have requested consent *but for* the first illegal search...." *Id.* at 147 (emphasis added). The district court's finding is directly contrary to the Supreme Court's expressed rejection in *Wong Sun, supra,* of a "but for" exclusionary rule. The issue is not whether the officers "would not have re-

quested consent *but for* the first illegal search," but rather whether the officers exploited the fruits of their illegal activity in such a way that Carson's consent to the search was involuntary under the Fourth Amendment. *Wong Sun, supra* 371 U.S. at 488, 83 S.Ct. at 417–18.

■ We also disagree with the district court's finding and conclusion that a defendant's voluntary consent does not purge the taint of the prior illegality when the Government's request for consent to search is *motivated* by illegally obtained information. "When, however, as the Court has found in this case, the Government's request for consent to search is motivated by critical information ascertained by the prior illegal conduct of the Government, this Court questions how the individual's voluntary consent alone can realign the Government's actions within the bounds of the Fourth and Fourteenth Amendments." (R., Vol. I, p. 147.) The Government's motivation is irrelevant to the issue of whether or not the evidence is obtained by means "sufficiently distinguishable to be purged of the primary taint," or free of police exploitation of the prior illegality. *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417. In a consent case under *Wong Sun,* the only inquiry is whether the defendant's *grant* of consent is voluntary under the totality of the circumstances. The police officers' purpose, motivation, or basis for merely *requesting* the defendant to waive his Fourth Amendment rights have no bearing on the validity and effect of defendant's consent once it is determined that this consent is voluntary under the totality of the circumstances.

■ We also disagree with the district court's following statement:

Most importantly, the Court questions a rule of law which allows the government to make a surreptitious entry into the home of a citizen, conduct an illegal wiretap or perform any other illegal conduct invasive of a citizen's privacy, and then, on the basis of the information gleaned from this illegal conduct, *cajole the consent of the unwitting citizen* and then

find that incriminating evidence discovered is admissible evidence in a criminal prosecution of that citizen.

(R., Vol. I, p. 147 (emphasis added).) If the consent of an unwitting citizen has been "cajoled" based on the illegal conduct of Government officials, then the citizen's consent is not "voluntary." If Government officials use the fruits of their illegal conduct to "cajole" the consent of an unwitting citizen, then the evidence is obtained by exploitation of the primary illegality and is not obtained by means sufficiently distinguishable from the illegality to be purged of the primary taint. We agree that there may be certain situations in which Government officials, using illegally obtained information, might coerce or cajole the defendant into consenting to a search. Under such circumstances the consent would be involuntary, the search illegal, and the evidence seized thereby rendered inadmissible.

■ Finally, considering the policy reasons underpinning the exclusionary rule, we hold that extending the "fruit of the poisonous tree" doctrine to exclude evidence obtained in a case in which defendant voluntarily consents to waive his constitutional rights does not justify the costs upon law enforcement. As Justice Powell stated in his concurring opinion in *Brown v. Illinois,* 422 U.S. 590, 608–09, 95 S.Ct. 2254, 2264–65, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part):

The Court's rejection in *Wong Sun* of a "but for" test, reaffirmed today ... recognizes that in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule's deterrent purposes. The notion of the "dissipation of the taint" attempts to mark the point at which the detrimental consequences of the illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost.

■ A search conducted pursuant to voluntary consent is one of the specifically established exceptions to the technical re-

quirements of the Fourth Amendment. Excluding evidence obtained pursuant to voluntary consent neither protects Fourth Amendment rights, which are waived by the defendant's consent, nor deters law enforcement officials from conducting illegal searches and seizures which are of little, if any, value to the police in obtaining defendant's subsequent voluntary consent. The mere hope that they may later be able to obtain defendant's voluntary consent to a subsequent search is little incentive for police initially to proceed illegally. In addition, the inability of law enforcement officials to rely upon illegally obtained evidence to obtain valid search warrants or to obtain legally sufficient probable cause for searches and seizures sufficiently protects Fourth Amendment rights from deliberate police violations. In cases in which defendant's voluntary consent to search is obtained, strict adherence to the exclusionary rule would impose greater costs on the legitimate demands of law enforcement than can be justified by the rule's deterrent purposes.

**AFFIRMED**.

LOGAN, Circuit Judge, concurring:

I agree with the result in the majority decision. But parts III and IV state a broader rule than I am willing to accept.

First, I do not read *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), as setting out two tests under which evidence, the knowledge of which was obtained as a result of prior illegal police action, may be admissible. *Wong Sun* does reject a "but for" test. The rule it adopts, however, is that such evidence is admissible if "instead" of exploiting the illegality, the evidence was obtained by means "sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. at 417. In other words, the majority's two independent tests are really different sides of the same coin.

Further, I do not read *Wong Sun* as holding that the circumstances surrounding the government's illegal acts are irrelevant whenever consent has been given freely.

*Wong Sun* refused to permit defendant Toy's statements into evidence, although allegedly voluntarily given, because of the particular circumstance of that case. The officers had broken down his door, followed him into a bedroom, handcuffed, and arrested him; his consent in those circumstances did not purge the taint of the initial unlawful invasion. *Id.* at 486, 83 S.Ct. at 416. On the other hand, defendant Wong Sun's statement was admissible because he gave it several days after his release on his own recognizance and after he had voluntarily returned to the police. In such circumstances the Court found that the taint had been dissipated.

*Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), which also involved the admissibility of a confession following an illegal arrest, clarified the holding of *Wong Sun*. In *Brown* a confession had been obtained after a *Miranda* warning; the Court held it was not automatically admissible even if it was voluntary. Rather, it stated that a court must view the illegal arrest under the Fourth Amendment and determine whether the confession was obtained by exploitation of the illegal arrest. In making that determination the "temporal proximity of the arrest and the confession, the presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant." *Id.* at 603–04, 95 S.Ct. at 2261–62 (footnotes and citations omitted). Courts since *Brown* have applied this analysis to consents to search following illegal detention. *See United States v. Wellins*, 654 F.2d 550, 552–53 (9th Cir.1981); *United States v. Taheri*, 648 F.2d 598, 601 (9th Cir.1981); *United States v. Sanchez-Jaramillo*, 637 F.2d 1094, 1099–1100 (7th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980); *United States v. Perez-Esparza*, 609 F.2d 1284, 1289 (9th Cir. 1979); *United States v. Jones*, 608 F.2d 386, 391–92 (9th Cir.1979); *United States v. Wilson*, 569 F.2d 392, 396 (5th Cir.1978).

By analyzing the instant case solely in terms of whether the consent was volun-

tary, the majority places insufficient weight on the *Brown* factors. For example, the majority in effect states that because defendant Carson was unaware of the previous search, it could not affect the validity of the consent. At 1155 (citing *Moran v. Burbine,* —— U.S. ——, ——, 106 S.Ct. 1135, 1141–42, 89 L.Ed.2d 410 (1986)). Thus, under the majority's analysis, the flagrancy of the prior police misconduct is irrelevant unless the defendant is aware of the previous search, in direct contrast to what *Brown* and the circuit cases that have interpreted *Brown* say. The majority opinion in the instant case appears to adopt a per se attenuation rule: If the consent was freely given, whatever illegalities have gone before are irrelevant. I do not think we can say that in view of *Wong Sun* and *Brown.* Instead we must consider the time span between the two searches, the purpose and flagrancy of the initial police misconduct, and whatever other factors seem relevant in the circumstances of the case before we decide whether exclusion is necessary to deter unconstitutional police conduct and to preserve judicial integrity.

If the initial illegal search in the instant case had been particularly egregious, or if the police had engaged in coercive conduct, I would read *Brown* to require exclusion despite Carson's voluntary consent to the second search. *See Perez-Esparza,* 609 F.2d at 1289. But I would permit the admission of the evidence here. Although an officer first obtained knowledge of the doves by lifting a vest covering a five-gallon pail illegally, this was not an illegal search as flagrant as, for example, breaking into a home or unlawfully tapping a telephone, thus not implicating the deterrence consideration of the exclusionary rule. *Cf. United States v. Leon,* 468 U.S. 897, ——, 104 S.Ct. 3405, 3412–15, 82 L.Ed.2d 677 (1984) (exclusionary rule should only be applied when "its remedial objectives are thought most efficaciously served"). Further, there was no hint of coercion. I believe Carson had been an employee of the Fish and Game Commission and apparently knew the officers. The consent to search was freely given.

Carson must have known the doves would be found; apparently he was confident that his possession was legal, or that the officers would be unable to prove that the doves were shot that day. In these circumstances I do not believe the second search arose through "exploitation" of the first search within the meaning of *Wong Sun* and *Brown,* despite the short time span between the illegal search and Carson's consent. *See United States v. Wellins,* 654 F.2d at 555 ("lack of a significant intervening period of time does not, in itself, require that the evidence be suppressed for want of sufficient attenuation.").

Accordingly, I agree that the evidence discovered in the consensual search need not be suppressed.